# United States District Court
for the
NORTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

Gustavo Mata

Case No. 2:20-mj-82
**SEALED**

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of <u>July 1, 2012,</u> in the county of <u>Lake</u> in the <u>Northern</u> District of <u>Indiana</u> and elsewhere, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C, Section 1959(a)(1) | Murder in Aid Racketeering |

This criminal complaint is based on these facts:
See attached affidavit.

√ Continued on the attached sheet.

_____
Complainant's signature
Special Agent, John Tallarico
FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P 4.1 by email transmission and telephonic confirmation.

June 1, 2020
Date

s/Andrew P. Rodovich
Judge's Signature

Hammond, Indiana
City and State

Andrew P. Rodovich, U.S. Magistrate Judge
Name and Title of Judicial Officer

## Affidavit

John Tallarico, Special Agent, Federal Bureau of Investigation, being sworn, deposes and states the following:

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for over nine years. I am currently assigned to the Chicago Will County Safe Streets Task Force, which investigates gangs, violent crime, and drug activity in the south suburbs of Chicago, Illinois. During my time as a Special Agent, I have been involved in investigating criminal gang activity and narcotics distribution. My duties include the investigation of violations of federal law. I have participated in multiple gang related investigations, arrests and gang related interviews. I have participated in the investigation of violent and gang-related crimes, to include drug and firearms offenses. I have investigated and participated in cases involving persons violating the federal firearms and narcotics laws, as well as individuals violating racketeering laws.

2.  The information contained in this affidavit is based upon my firsthand knowledge and the information provided by other law enforcement officers and witnesses. This affidavit is being submitted for the limited purpose of establishing probable cause for a federal complaint, and therefore contains only a summary of the relevant facts. I have not included each and every fact known to me concerning this investigation.

1

3. Your Affiant has been involved in an investigation of the LATIN DRAGON NATION (LDN) street gang over the past two years. This investigation has been conducted by the FBI, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Hammond Police Department, Chicago Police Department, the United States Attorney's Office for the Northern District of Indiana (NDIN), and has involved several other state and local law enforcement agencies.

4. During the course of this investigation, five superseding indictments have charged members and associates of the LDN with Conspiracy to Participate in Racketeering Activity (RICO Conspiracy) in violation of 18 U.S.C. 1962(d) and other related counts in *United States v. Manuel Diaz, et al.*, Cause No. 2:17-CR-138 NDIN.[1] Of the eighteen defendants charged in this case, thirteen were either charged with or pleaded guilty to participating in a homicide. To date, nine defendants have pleaded guilty to Conspiracy to Participate in Racketeering Activity and five of the nine have acknowledged to participating in a homicide.

---

1 In the RICO Conspiracy charged in Count One of the Fifth Superseding Indictment, in which Manuel Diaz and Jonathan Arevalo and others are charged, one of the overt acts charges as follows:
On or about July 1, 2012, JONATHAN AREVALO, MANUEL DIAZ, and another LATIN DRAGON NATION member were on the back porch of AREVALO's residence. Upon seeing a suspected rival gang member walking past an adjacent building, AREVALO provided a firearm to the LATIN DRAGON NATION member, who used the firearm to shoot at the suspected rival, Kelly Vann (Victim #9), striking him in the head, resulting in his death.
As indicated below, GUSTAVO MATA is the unnamed co-conspirator who shot and killed Kelly Vann.

5. As detailed below, the investigation has revealed that GUSTAVO MATA also known as (AKA) "Angel" is a member of the LDN street gang. At all times relevant to this criminal complaint, the LDN was and are a street gang that is a criminal organization whose members and associates engage in acts of violence, including murder, attempted murder, robbery, aggravated battery, aggravated assault, kidnapping and narcotics distribution, and which operates in the Northern District of Indiana, Chicago, Illinois, and elsewhere.

6. On the basis of the information contained in this affidavit, I submit that the facts contained herein are sufficient to establish probable cause to believe that on July 01, 2012, in Chicago, IL, GUSTAVO MATA committed the crime of Murder in Aid of Racketeering by shooting and killing Kelly Vann.

## General Background and Structure of the Latin Dragon Nation

7. The LDN, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, 1959(b)(2), that is, a group of individuals associated in fact, that were engaged in and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose

3

members, prospects and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

8. The structure of the LDN included, but was not limited to, the following:

a. The LDN is a Chicago-based criminal street gang that that currently has groups of members and associates known as "Neighborhood Sets" in Northwest Indiana, Southeast Chicago, and Chicago's Southeast Suburbs.

b. The LDN has a detailed and uniform organizational structure, which is outlined—along with various prayers, codes of behavior, and rituals—in a written "Bible" distributed to certain members throughout the region.

c. The LDN's colors are black and white. The symbols of the LDN include a diamond and a dragon.

d. The LDN's hierarchy and structure consist of an Overall Chief. The ranks within the Neighborhood Sets consist of Chief, Lieutenant, Sergeant of Arms, Chief of Security, Soldiers, and prospective members known as "Shorties."

e. The LDN are affiliated with the "Folk" nation of gangs, whose alliance is primarily applicable to incarcerated members and associates. Rival street gangs of the LDN include, but are not limited to, the Latin

Kings, Ambrose, Spanish Gangster Disciples, Black P. Stone, and Spanish Vice Lords.

## Membership

9. In order to join the LDN prospective members or "shorties" are required to prove themselves by committing various criminal acts such as drug sales or shooting at rival gang members in support of the gang. If selected for membership, a prospective member may be given a "violation" of a certain number of minutes, which entails the prospective member getting beaten by multiple members of the LDN. While a "shorty" is attempting to join the gang his conduct is observed by the members of the LDN. While a "shorty" is attempting to join the gang, he is considered a part of the LDN family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

## Purposes of the Enterprise

10. The purposes of the enterprise included, but were not limited to, the following:

   a. Enriching the leaders, member, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon, and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook steps to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against LDN members who were suspected of having cooperated with law enforcement. Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## The July 1, 2012 Homicide of Kelly Vann

11.     LDN, through its members and associates, engages in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, in violation of the laws of the Illinois and Indiana and narcotics offenses in violation of federal law.

12.     On July 1, 2012, at approximately 2:10 a.m., the Chicago Police Department (CPD) was dispatched to a vacant lot located at 8821 South Exchange Avenue, Chicago in response to an individual down calling for help. Upon arrival, officers met with a Chicago Fire Department (CFD) ambulance on scene where Kelly Vann, a 49 year old black male, was unresponsive. While on scene, CPD officers spoke with Arturo Arevalo of 8817 South Exchange Avenue. Arevalo advised that he called 911 after hearing a person calling for help. Vann was transported to Christ Memorial Hospital where he received an x-ray that determined he was the victim of a small caliber gunshot wound to the head. Vann was pronounced dead later on July 1, 2012.

13.     CPD processed the homicide scene and recovered a 2 liter Nehi plastic pop bottle, a Marlboro cigarette butt, and suspected blood next to where Vann was found. As part of their investigation, CPD took a swab of the 2 liter Nehi plastic pop bottle for DNA, and submitted it to the Illinois State Police (ISP) Forensic Science Center for analysis. On March 4, 2014, CPD was notified by the ISP Forensic Science Center that a DNA association had

been found with the swab from the 2 liter Nehi plastic pop bottle. The DNA from the 2 liter Nehi plastic pop bottle was associated with Manuel Diaz, a documented member of the LDN.

14. On March 4, 2020, as a result of the current investigation into the LDN in the NDIN, Diaz pleaded guilty to Conspiracy to Participate in Racketeering Activity. Within his plea agreement, Diaz acknowledged participating in numerous acts of violence as part of the LDN activities. One included the murder of Charles Berrios on September 30, 2017 in Hammond, IN. Diaz also agreed that "on July 1, 2012, I accompanied a co-defendant and another LDN member, when that LDN member shot and killed a 49-year old man that we mistook for a rival gang member."

15. During the Diaz plea hearing, the government proffered facts to support Diaz's guilty plea. Of the facts, the following was proffered:

> On July 1, 2012, the Defendant accompanied a Jonathan Arevalo and another LDN member on the rear porch of Arevalo's residence, when that LDN shot and killed a 49 year old man (Vann, Kelly) that they mistook for a rival gang member. During the investigation, CPD recovered the Defendant's DNA from a bottle located in close proximately from where Vann, Kelly's body was found.

At the conclusion of the proffer, Diaz under oath acknowledged these facts.

16. Additionally, a fired bullet was recovered from Vann during the autopsy. The fired bullet was also submitted to the ISP Forensic Science

Center for analysis. The Forensic Science Center determined that the fired bullet recovered from Vann during the autopsy was a .22 caliber.

17. During the course of the ongoing investigation into the LDN in the Northern District of Indiana, two Cooperating Defendants pleaded guilty to the RICO Conspiracy and provided information about the Vann homicide.

18. During an interview on September 17, 2019, Cooperating Defendant #1 acknowledged to drinking alcohol at Jonathan Arevalo's house on the night of June 30, 2012. According to Cooperating Defendant #1, Jonathan Arevalo, Manuel Diaz, and GUSTAVO MATA were also there drinking. Cooperating Defendant #1 left in the early morning hours of July 1, 2012, and returned later that day to give Arevalo, Diaz, and MATA a ride. Cooperating Defendant #1 noticed that they were all extremely quiet during the car ride so later on Cooperating Defendant #1 asked MATA what had happened. MATA explained to Cooperating Defendant #1 that he (MATA) used a rifle to shoot an older black male in the head from the back porch at Arevalo's house after Cooperating Defendant #1 left Arevalo's house. Cooperating Defendant #1 had previously seen the rifle MATA used at Arevalo's house several times and knew it to be kept right inside the door from the back porch at Arevalo's house. Cooperating Defendant #1 knew the rifle to be a LDN rifle. According to Cooperating Defendant #1, MATA got his "teardrop" tattoo under his eye to commemorate the murder. Additionally,

9

Cooperating Defendant #1 was present when Cooperating Defendant #2 and Manuel Diaz used to urinate on the memorial for Vann. Cooperating Defendant #1 explained that they initially believed that Vann was a member of the Black P Stone street gang, a rival of the LDN, but they later learned that Vann was the father of a black member of the LDN named "Coco."

19.   During an interview on August 7, 2019, Cooperating Defendant #2 said that another co-defendant told Cooperating Defendant #2 that GUSTAVO MATA killed an older black man in a gangway near Jonathan Arevalo's house on Exchange Avenue. The same co-defendant also told Cooperating Defendant #2 that the older black man that MATA killed had a son who was a black member of the LDN named "Coco." Cooperating Defendant #2 stated that they initially believed the older black man was a member of the Black P Stone street gang. Cooperating Defendant #2 believed that Cooperating Defendant #1 and Diaz were also aware of this homicide.

20.   In addition Arevalo, another co-defendant, told Cooperating Defendant #2 that they used to urinate on the spot where the "old man" was killed. Additionally, Cooperating Defendant #2 knew that MATA had a "teardrop" tattoo to represent the fact that he (MATA) committed the murder.

21.   Cooperating Defendant #1 knew MATA to be a member of the LDN since at least 2009, when Cooperating Defendant #1 sought to join the LDN. On May 5, 2012, Burnham Police Department arrested MATA for

10

weapons violations while accompanied by other self-admitted LDN members, including a co-defendant in the *Diaz, et al case*. During a post-Miranda statement, MATA also admitted that he was a LDN member. Cooperating Defendant #2 knew MATA to be a member of the LDN from at least the time of his release in September 2012 from a three-year prison sentence. Additionally, MATA has a tattoo of a diamond on his neck, which your Affiant knows to be one of the symbols of the LDN.

22. Based on interviews with cooperators and other members of the LDN, your Affiant understands that targeting a rival gang member would increase a LDN member's level of respect and status within the LDN; and although MATA mistakenly killed a non-rival, the killing still increased his status within the gang. In an attempt to further capitalize on the respect from the homicide, MATA got a "teardrop" tattoo to commemorate this murder.

23. The investigation has revealed that on July 1, 2012, Jonathan Arevalo's house was 8817 South Exchange Avenue in Chicago. Of note, Arturo Arevalo, whom CPD spoke with on the scene of Vann's homicide on July 1, 2012, is Jonathan Arevalo's father.

24. This complaint and warrant is being considered electronically vial telephone or other reliable means, in accordance with Federal Rules of

Criminal Procedure 4.1. Furthermore, this affidavit has been electronically transmitted verbatim to the judge.

## Conclusion

25. Based on the information provided in this affidavit, there is probable cause to believe that MATA committed murder in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2, that is, for the purpose of maintaining and increasing position in LDN, an enterprise engaged in racketeering activity, MATA did intentionally and knowingly murder Kelly Vann, in violation of Illinois Compiled Statutes 720 Section 5/9-1.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN TALLARICO, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

This affidavit and accompanied warrant have been transmitted to me electronically and the affiant has verbally attested to the truth and accuracy of the contents via telephone this 1st day of June, 2020.

_____
s/Andrew P. Rodovich
Andrew P. Rodovich
United States Magistrate Judge
Northern District of Indiana